Clayton H. RICHARDSON, III, Plaintiff,

v.

CLAYTON & LAMBERT MANUFACTURING COMPANY, Defendant.

Civ. A. No. EC 84–3–D–D.

United States District Court, N.D. Mississippi, E.D.

Jan. 20, 1987.

Opinion Denying Reconsideration April 17, 1987.

John W. Crowell, Columbus, Miss., for plaintiff.

Tommie Williams, Lonnie Bailey, Greenwood, Miss., for defendant.

## MEMORANDUM OPINION SUSTAINING PLAINTIFF'S MOTION FOR NEW TRIAL

DAVIDSON, District Judge.

The instant action was tried before a jury and a verdict was returned for the defendant on July 30, 1986. The plaintiff has now submitted a motion for a new trial based on several assertions of error. After a thorough and agonizing review of the facts of this case and the applicable law, the court is of the opinion that the jury instruction on assumption of the risk misled the jury and that a verdict based on this instruction combined with the other instructions given by the court will result in a miscarriage of justice.

The court instructed the jury that it must return a verdict for the defendant if it found that on the day of the accident the plaintiff (1) must have known of existing conditions in the Buntin pool, including the depth and contours of the pool, and (2) must have known that by diving from the side of the Buntin pool in the manner that he did and in the direction that he dived that he could be seriously injured, and (3) that despite his knowledge and appreciation, the plaintiff deliberately dove into the pool in the face of his knowledge of the depth and contour of the pool and was injured. The plaintiff asserts that an assumption instruction should not have been given under the facts of this case in conjunction with a comparative negligence instruction.

## I.

The touchstone Mississippi authority concerning cases where the doctrines of assumption of risk and comparative negligence overlap is *Braswell v. Economy Supply Co.*, 281 So.2d 669 (Miss.1973). In *Braswell* the Mississippi Supreme Court recognized that while assumption of the risk is a complete bar to recovery, contributory negligence under the Mississippi comparative negligence statute is not. Consequently, the court stated that it saw the need to adopt a rule to govern cases where the doctrines of assumption of risk and contributory negligence overlap and coincide. The *Braswell* court recognized that while the doctrine of assumption of risk has been applied in a few cases in Mississippi, the doctrine has been limited and restricted. *Id.* at 673. The court also noted that in jurisdictions such as Mississippi that have comparative negligence statutes apportioning damages between plaintiff and defendant, the doctrine of assumption of risk has been under sharp attack and consequently has been narrowed to encompass only very limited circumstances.

In formulating a rule to apply in Mississippi cases where the doctrines of assumption of risk and contributory negligence overlap, the *Braswell* court quoted W. Prosser, *Law of Torts*, 456–57 (4th ed. 1971) as follows:

In all probability [application of assumption of risk in a state that has a comparative negligence statute] defeats the basic intention of the statute, since it contains an absolute bar in the case of one important, and very common, type of negligent conduct on the part of the plaintiff. It can scarcely be supposed in reason that the legislature has intended to allow a partial recovery to the plaintiff who has been so negligent as not to discover his peril at all, and deny it to one who has at least exercised proper care in that respect, but has made a mistake of judgment in proceeding to encounter the danger after it is known....

*All this goes to say, however, not that there is no such defense as assumption*

*of risk, but that in many cases, at least, where it overlaps and coincides with contributory negligence, the rule of that defense should be applied to it.* Braswell, 281 So.2d at 676–77 (emphasis in original). The Mississippi Supreme Court adopted the rule suggested in Prosser and held that "where assumption of risk overlaps and coincides with contributory negligence the rules of the defense of contributory negligence shall apply." *Id.* at 677. In making this ruling the *Braswell* court specifically noted, as suggested in Prosser, that it was not completely abolishing the defense of assumption of risk. The court also stated that its ruling did not prevent the defendant from asserting that the plaintiff's injury was caused by his own negligence, if his negligence was the sole proximate cause of the injury. *Id.* at 677.

In *Yarbrough v. Phipps*, 285 So.2d 788 (Miss.1973), the court noted that the Mississippi Supreme Court has approved instructions based on assumption of risk "[o]nly in rare circumstances". In order for the instruction to be given, the *Yarbrough* court held that the trial court must find that the plaintiff's conduct was "venturous". *Id.* at 790. Similarly, in *Alley v. Praschak Machine Co.*, 366 So.2d 661 (Miss.1979), the Mississippi Supreme Court reiterated that an assumption of risk instruction should be given to a jury only under very limited circumstances. Justice Lee, writing for the court, stated:

> The assumption of risk issue seldom should be submitted to a jury under Mississippi's Comparative Negligence Law. Where the assumption of risk doctrine would apply, the negligence of the injured person, for practical purposes, would have to be the sole proximate cause of the accident, and such issues should be submitted to the jury rather than assumption of risk.

*Id.* at 665 n. 1. *Cf. Hill v. Dunaway*, 487 So.2d 807, 801 n. 1 (Miss.1986).

In one federal district court case applying Mississippi law, the court stated: "Assumption of the risk is a jury question in all but the clearest cases." *McGowan v. St. Regis Paper Co.*, 419 F.Supp. 742, 746 (S.D.Miss.1976), *quoted in Bryant v. Nealey*, 599 F.Supp. 248, 249 (N.D.Miss.1984). This statement was apparently based upon the case of *Daves v. Reed*, 222 So.2d 411, 414 (Miss.1969). *Daves* was decided prior to the ruling in *Braswell* that where assumption of risk and contributory negligence overlap, an assumption of risk instruction should not be submitted to the jury. In relying upon *Daves*, the district court apparently disregarded the ruling in *Braswell* as well as the strong statements by the Mississippi Supreme Court in *Yarbrough* and *Alley* that the issue should seldom be submitted to the jury. The statements in *Yarbrough* and in *Alley* are in sharp contrast to the statement in *McGowan* that "[a]ssumption of the risk is a jury question in all but the clearest cases." *McGowan*, 419 F.Supp. at 746. Although recognizing these statements by federal courts, this court is *Erie* bound to apply the law of Mississippi according to its statutes and as most recently stated by the Mississippi Supreme Court. *Compare Hedgepeth v. Fruehauf Corp.*, 634 F.Supp. 93, 99 (S.D.Miss.1986) (In products liability case district court cited *Braswell* and stated that when assumption of risk and contributory negligence overlap, "the giving of an instruction on assumption of risk is, upon timely objection, reversible error.")

While the language of the Mississippi Supreme Court in *Braswell, Alley* and *Yarbrough* is very negative concerning when an assumption instruction should be given, the court in each of these cases and in other cases has consistently pointed out that assumption of risk is still a viable, although limited, defense in Mississippi. For example, in *Nichols v. Western Auto Supply Co., Inc.*, 477 So.2d 261 (Miss. 1985), the plaintiff did not request a comparative negligence instruction, and none was given. An assumption of risk instruction was requested by the defendant and was given by the trial court. In upholding the giving of the instruction, the Mississippi Supreme Court stated: "Regardless of the feeling of attorneys and judges on assumption of risk, the doctrine has not been abolished in Mississippi, and [the instruction]

properly submitted the question to the jury." *Id.* at 264.[1]

These cases and other Mississippi cases indicate that in determining whether an assumption of risk instruction should be given the court must analyze the circumstances of each case. If the circumstances show that the plaintiff may have assumed the risk but also indicate that the plaintiff may have been negligent without assuming the risk, then the two doctrines overlap, and only the comparative negligence instruction should be given.[2] In such a case an instruction on assumption of risk should not be given unless the court finds that the circumstances of the case qualify the case as one of those rare cases where the plaintiff's conduct is deemed to be venturous. Even in these rare cases, the Mississippi Supreme Court has indicated that an instruction on sole proximate cause would be preferable over an assumption of risk instruction.[3]

## II.

The facts of the instant case indicate that the doctrines of contributory negligence and assumption of risk do overlap. Thus, if the court applies the general rule stated in *Braswell*, it must hold that the assumption of risk instruction in conjunction with the comparative negligence instruction was improvidently granted. This result may be avoided only if the court finds that this case qualifies as one of those rare cases where the plaintiff's conduct was so ventu-

rous that the assumption of risk instruction was justified under the circumstances.

In order for this court to determine whether the plaintiff's conduct in the instant case rises to that level of venturous conduct deemed to justify the giving of an assumption of risk instruction, the court must review and compare the facts of relevant Mississippi cases in which the assumption of risk instruction was found to be proper and the facts of relevant cases in which the assumption instruction was deemed improper.[4]

In *Alley v. Praschak Machine Co.*, 366 So.2d 661 (Miss.1979), the plaintiff had been severely injured while working on a machine built by the defendant. The plaintiff was adjusting a switch on the machine and while adjusting the machine stuck his left arm across a chain on the machine for the purpose of holding to a part of the machine. The adjustment that he made to the machine activated the chain. The chain caught the plaintiff's arm and caused it to be amputated. The trial court in *Alley* submitted an assumption of risk instruction to the jury along with other instructions, and the jury returned a verdict for the defendant. The plaintiff appealed arguing that the trial court improperly submitted the assumption of risk instruction to the jury.

In determining whether the assumption instruction was appropriate in that case, the *Alley* court quoted *Braswell* as follows:

Where the facts are such that the plaintiff must have had knowledge of the

---

1. The *Nichols* court did not state whether it considered the doctrines of assumption and comparative negligence to overlap under the facts of that case. Since no comparative negligence instruction was submitted by the plaintiff, the court was not faced with the issue of whether giving instructions on both doctrines was proper.

2. This rule is in harmony with Mississippi Code § 11–7–17 (1972) which provides:

    *All* questions of negligence and contributory negligence shall be for the jury to determine. When an assumption of risk instruction is given, the jury is instructed that it *must* find for the defendant if it finds that the plaintiff assumed the risk. The jury is not allowed to consider or weigh the negligence, if any, of the

defendant. Thus, when an assumption of risk instruction is given, the rule that all questions of negligence should be determined by the jury is in effect ignored. In this vein, the court notes that Mississippi Model Jury Instruction 36.10, which the court regarded as a guide in granting the assumption of risk instruction in this case, does not allow the jury to consider any negligence by the defendant.

3. In the instant case a sole proximate cause instruction was given, as well as the instructions on assumption of risk and comparative negligence.

4. Relevant cases are those cases that were decided subsequent to the rule established in *Braswell*.

hazard, the situation is equivalent to actual knowledge and there may be assumption of the risk. In some cases the circumstances may show as a matter of law that the risk was understood and appreciated and often they may present in that particular a question of fact for the jury. Also, the plaintiff may not close his eyes to obvious dangers, and cannot recover where he was in possession of fact from which he would be legally charged with appreciation of the danger.

*Alley*, 366 So.2d at 664 (quoting *Braswell*, 281 So.2d at 674–75). In *Alley*, the plaintiff testified that he knew that exposing his arm to the chain while the power was on constituted an open and obvious hazard to his arm. Although the plaintiff testified that he thought the power was off, a fellow employee testified that he had asked the plaintiff: "Do you want me to cut the power off?" The employee further testified that the plaintiff had replied: "No, just leave it alone and get out of the way." A bystander also testified that he heard the plaintiff tell another employee to turn the power on. The evidence showed that the plaintiff was an experienced electrician and that he was familiar with and appreciated the danger associated with his activity. The *Alley* court held that since the evidence was so strong that the plaintiff knew that the power was on and that the plaintiff clearly knew that his activity would subject him to highly dangerous electricity when the power was on, the instruction on assumption of risk was proper. *Alley*, 366 So.2d at 665.

In *Singleton v. Wiley*, 372 So.2d 272 (Miss.1979), the plaintiff, a high school student, had been injured when he jumped on the back of a car in motion and fell. The evidence indicated that the defendant, the driver of the car, was looking ahead and did not see the plaintiff jump on the car and did not hear the plaintiff yell to "hold up". Other evidence indicated that the plaintiff may not even have yelled to the defendant. Also, there was no evidence that the defendant was driving negligently. Under these circumstances the Mississippi Supreme Court held that the *Singleton* case qualified as one of those rare cases where an assumption of risk instruction could be given in conjunction with a comparative negligence instruction.[5]

In *Nichols v. Western Auto Supply Co.*, 477 So.2d 261 (Miss.1985), the defendants were sued for the wrongful death of Nichols based on a claim of strict liability. The defendants had manufactured and sold a gas stove to the son of the deceased. Af-

---

**5.** The *Singleton* court stated: "This is one of those rare cases where the doctrines of comparative negligence and assumption of risk appear to overlap, and where instructions on both could be given." *Singleton*, 372 So.2d at 274. This statement appears to have been made in reliance on what the *Singleton* court apparently thought was the holding in *Braswell*. The *Singleton* court stated that the *Braswell* court stated:

> The doctrine of assumption of risk was properly applied to the unusual facts of this case and it represents one of the rare instances where it is applicable.

*Singleton*, 372 So.2d at 275 (citing *Braswell*, 281 So.2d at 675).
A review of *Braswell* indicates that this was not the *Braswell* court's holding. Rather, the *Braswell* court was stating at 281 So.2d page 675 of its opinion that the doctrine of assumption of risk was properly applied under the unusual facts in *Herod v. Grant*, 262 So.2d 781 (Miss. 1972).
In *Herod*, the Mississippi Supreme Court had held that the facts indicating the plaintiff's assumption of risk were so strong and the facts indicating negligence by the defendant were so weak that the trial court should have granted the defendant's motion for a directed verdict at the end of the plaintiff's testimony. *Herod*, 262 So.2d at 783. Thus, in *Herod* there was no overlapping of assumption of risk and contributory negligence and no issue concerning whether an assumption instruction should be given when it overlaps with contributory negligence.
In discussing *Herod*, the *Braswell* court was stating that the facts of *Herod* were very unusual and that the *Herod* case represents one of the rare instances where the assumption of risk doctrine is applicable. Contrary to its observation of the *Herod* holding, the Mississippi Supreme Court in *Braswell* held that under the facts of *Braswell*, "the giving of the instruction on assumption of risk was reversible error." *Braswell*, 281 So.2d at 678. The *Braswell* court reversed and remanded the case stating that an instruction concerning the plaintiffs' own contributory negligence, if any, should be given rather than an assumption of risk instruction. *Id.*

ter installation of the stove, several people were shocked in various areas of the Nichols house. The uncontradicted facts showed the following:

(1) Clarence Nichols, the decedent, was aware that Larry Nichols and other members of his family had been slightly shocked by the water pipes on a number of occasions prior to July 26, 1979.

(2) The decedent was present on July 26, 1979, when the South Central Bell employee was badly shocked.

(3) The decedent was informed by the employees for South Central Bell that something should be done about the energized water pipes and his reply was that he had built the house and knew more about it and he would take care of it himself.

(4) The South Central Bell employees refused to do any further work under the house until Clarence Nichols turned the power off so as to eliminate the danger of shock from the water pipes.

(5) Clarence Nichols was informed by his son that he had been badly shocked later that same day in attempting to turn on the water faucet in the carport.

(6) The decedent had been shocked by the pipes himself prior to the accident.

(7) Knowing all of this, the decedent crawled up under the house with a drop light to look at the water pipes. He was not under the house to do anything, not with any tools, but solely for the purpose of making a "visual inspection."

(8) The decedent was aware enough of the danger to instruct his son not to come under the house because the pipes were "hot."

(9) Despite this warning to his son, Clarence Nichols continued to crawl under the house, then turned back without having done anything, and in crawling out came in contact with an energized pipe, was shocked and subsequently died.

*Id.* at 263. Although a frayed wire was found on the stove, there was apparently no evidence that this wire on the stove was the proximate cause of the accident. The evidence indicated that the accident was caused by faulty wiring containing no grounding that had been installed by the decedent and the decedent's use of a plug that eliminated grounding. Based on these extreme facts, the *Nichols* court held that the assumption instruction had been properly given.

An assumption of risk instruction was also found to be proper in *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221 (5th Cir.1984) (applying Mississippi law). Although asserting that the assumption instruction given was improper, the appellant in *Alexander* apparently did not raise the *Braswell* rule concerning the proper doctrine to apply where the doctrines of assumption of risk and contributory negligence overlap.[6] The issue in *Alexander* was limited to the question of whether the evidence in the case showed that each of the elements necessary to establish a prima facie defense based on assumption of risk had been met. The *Alexander* court did not mention nor discuss the "overlapping" rule established in *Braswell*. Thus, while *Alexander* is instructive in determining whether the elements of the defense of assumption of risk have been established, it does not provide guidance on what path the Fifth Circuit would follow in applying Mississippi law if it found that the doctrines of assumption of risk and contributory negligence overlapped under the facts of a particular case.

The facts in *Nichols, Alley* and *Singleton* must be contrasted to the facts in cases where the court held that the assumption instruction was improper. In *Braswell*, the plaintiff was injured when he ventured into a lumber shed owned by the defendant. The defendant's salesman had told the plaintiff that he could go inspect the lumber and pointed to the lumber shed. The plaintiff entered the lumber shed and sustained injuries when a stack of lumber fell on him.

At the trial of the plaintiff's action against the defendant for personal injuries,

---

**6.** In fact, counsel for the plaintiff may have conceded that the doctrines of contributory negligence and assumption of risk did not overlap by submitting a plaintiff's instruction on assumption of risk. By submitting an assumption instruction, plaintiff apparently conceded that assumption of risk was a viable defense in the case.

the defendant asserted that the plaintiff "must have known" that it was unsafe to enter a lumber bin in the lumber shed next to a high stack of lumber that could easily be tipped over. At the time of the accident the plaintiff was thoroughly familiar with the characteristics and use of lumber and had been in the construction business for 27 years. Based on this evidence the court granted an assumption of risk instruction. The jury returned a verdict for the defendant. On appeal, the Mississippi Supreme Court held that despite the fact that the plaintiff had been in the construction business for 27 years and despite his familiarity with the lumber trade, the giving of an assumption of risk instruction based on the fact that the plaintiff must have known of the risk he was encountering was reversible error because under the facts of that case the doctrines of assumption of risk and comparative negligence overlapped and coincided. *Braswell,* 281 So.2d at 677.[7]

The *Braswell* court stated that giving the assumption instruction was error because the instruction denied the jury the right to weigh the respective negligence, if any, of the parties. *Braswell,* 281 So.2d at 676 (citing and comparing *Wallace v. J.C. Penney Co.,* 236 Miss. 367, 109 So.2d 876 (1959)).[8]

In *Yarbrough,* a truck had overturned in a ditch beside the road. The defendant approached after the accident and parked his car at an angle that would allow his headlights to shine down into the ditch onto the truck. The car was parked partially on the curb of the road and partially on the paved portion of the road. The plaintiff and others also parked their cars. They stood on the west shoulder of the road beside the defendant's parked car. An oncoming car struck the defendant's car and then struck the plaintiff. The plaintiff stated that she knew that the defendant's car, beside which she had been standing, was in a dangerous position. The plaintiff sued the defendant charging him with multiple acts of negligence. The defendant asserted that since the plaintiff knew of the danger, she had assumed the risk. The trial court allowed a jury instruction on assumption of the risk to be submitted to the jury, and a verdict was returned for the defendant.

On appeal, the *Yarbrough* court held that in order for an assumption of risk instruction to be proper, the plaintiff's conduct must be extremely venturous. *See Yarbrough,* 285 So.2d at 790 (assumption instruction should only be employed where the plaintiff's conduct is "much more venturous than was the conduct of [plaintiff] here"). *See also McLeod v. Whitten,* 413 So.2d 1020 (Miss.1982).

### III.

■ After analyzing these Mississippi cases, the court is of the opinion that the

---

**7.** In discussing assumption of risk, the *Braswell* court discussed three Mississippi cases: *Herod v. Grant,* 262 So.2d 781 (Miss.1972), *Elias v. Bowl-A-Way,* 245 Miss. 170, 146 So.2d 558 (1962), and *Wallace v. J.C. Penney Co.,* 236 Miss. 367, 109 So.2d 876 (1959). In *Herod,* the Mississippi Supreme Court had found that the facts were so strong that a directed verdict for the defendant should have been given to the defendant at the end of plaintiff's testimony. In analyzing the *Herod* holding, the *Braswell* court stated that under the strong and unusual facts in *Herod* the assumption of risk doctrine was properly applied. In *Elias,* the court had held that instructions on both assumption of risk and contributory negligence should be given. The *Braswell* court concluded that this holding in *Elias* "did not clarify the perplexing problem of whether assumption of risk or contributory negligence should be applied to a given set of facts." *Braswell,* 281 So.2d at 675. While not overruling *Elias,* the *Braswell* court indicated that *Elias*

has diminished significance where the doctrines of assumption of risk and contributory negligence overlap. In *Wallace,* the facts indicated that the plaintiff may have assumed the risk but also indicated that both the plaintiff and defendant may have been negligent. The court held that in this situation an assumption instruction is error because it denies the jury the right to weigh the negligence, if any, of the parties. The *Braswell* court agreed with and followed the *Wallace* decision. *Braswell,* 281 So.2d at 676.

**8.** The *Braswell* court's analysis of the cases indicates that if the evidence concerning assumption of risk is strong enough for a directed verdict, then the assumption of risk doctrine applies. *See, e.g., Herod,* 262 So.2d at 783. If the evidence is not this strong and there is evidence that both parties may have been negligent, the assumption instruction should not be given. *See, e.g., Wallace,* 109 So.2d at 877–78.

facts of the instant case demonstrate that the plaintiff's conduct did not rise to that level of venturousness that would justify the giving of an assumption of risk instruction in conjunction with an instruction on comparative negligence. In the instant case the evidence indicated that the plaintiff was an experienced swimmer. He was familiar with the Buntin pool and had gone swimming in it a number of times. The plaintiff testified that he knew that it was unsafe to dive into shallow water or water of an unknown depth. The evidence was conflicting on whether Richardson hit the side slope of the pool or the slope of the pool between the deep end and the shallow end. Assuming that the plaintiff dived toward and hit the slope between the deep end and shallow end, for it to be found that Richardson had assumed the risk, it would have to be found initially that since Richardson knew that it was unsafe to dive into shallow water, he "must have known" that diving toward the shallow end from the deep end of the pool exposed him to extreme risk. Although the plaintiff was participating in a game of sharks and minnows, he testified that prior to making the dive he "looked and thought it was deep enough. It looked like I could go. I thought I was making a safe dive." [9] The plaintiff had not been warned not to dive from the side of the pool in the deep end. No evidence at trial indicated that others using the pool knew not to make a dive such as the dive the plaintiff made in that area of the pool, or that it was obvious that such a dive *should not* be made. *Compare Alley,* 366 So.2d at 664–65 and *Nichols,* 477 So.2d at 262–63. Richardson was not aware that anyone had ever been injured in the Buntin pool or similar pools by diving from the side of the pool in the deep end in the manner that he dived. *Compare Nichols* at 263.

While the plaintiff's conduct in diving into the pool while playing sharks and minnows may have been venturous, the court is of the opinion that in order for the assumption doctrine to be applicable, the plaintiff's conduct would have to be "much more venturous than was the conduct of [Richardson] here." *See Yarbrough,* 285 So.2d at 790.

The evidence demonstrated that the plaintiff probably was guilty of contributory negligence in that he may have not acted as a reasonably prudent person would act or did not know what a reasonably prudent person should have known under the same circumstances. Since issues concerning the defendant's negligence, the plaintiff's negligence, and assumption of the risk existed in this case, the assumption instruction should not have been given unless the court can categorize this case as one of those rare cases where the assumption of risk instruction is deemed appropriate. After thorough analysis and with the aid of 20–20 hindsight, the court finds that this categorization cannot be made.

Based on the preceding discussion, the court is of the opinion that a new trial should be and is hereby granted. The court thus finds it unnecessary to address the plaintiff's remaining assertions of error. A review of those assertions reveals that they are for the most part meritless.

A separate order in conformance with this opinion shall this day be entered.

---

**9.** Although the defendant asserts in its brief that the plaintiff testified that he knew before making the dive that he could hit the bottom on the shallow end, the defendant's citation to the relevant portion of Richardson's testimony does not indicate that Richardson made this statement. The transcript cited by the defendant is as follows:

Q  Did you know before making the dive that you could hit the bottom?
Q  Where could you have hit the bottom?
A  In the shallow end.
Q  Did you dive in the shallow end?
A  No, I wasn't.

Q  Did you know that if you hit the bottom that you could break your neck and be paralyzed for the rest of your life?
A  I had never thought about it. You know, I had always heard don't dive in the shallow end, you know, you may get hurt, but, you know, that's about it.
Q  If somebody had told you not to dive from the side, would you have done it?
A  Yes, sir.
Q  Would you have dived from the side anyway?
A  No.

MEMORANDUM OPINION DENYING DEFENDANT'S MOTION TO RECONSIDER OR IN THE ALTERNATIVE FOR CERTIFICATION OF INTERLOCUTORY APPEAL

Presently before the court is a motion by the defendant for the court to reconsider its order granting plaintiff a new trial in this cause. Alternatively, the defendant moves that this court grant an interlocutory appeal to the Fifth Circuit. After reviewing the defendant's motion and brief, the court is of the opinion that the motion should be denied.

The defendant suggests that the court has misconstrued the holding in *Braswell v. Economy Supply Company,* 281 So.2d 669 (Miss.1973). The defendant submits that "in *Braswell,* the Mississippi Supreme Court meant that where contributory negligence and assumption of the risk coincide, instructions should be granted on both doctrines if supported by the evidence." The court has restudied *Braswell* and is of the opinion that the *Braswell* opinion was properly construed in the court's memorandum opinion granting plaintiff a new trial. If the *Braswell* court had intended that instructions on both comparative negligence and assumption of risk be given in any case if supported by the evidence as the defendant asserts, it would not have stated the issue as "whether assumption of risk *or* contributory negligence should be applied to a given set of facts." *Braswell,* 281 So.2d at 675 (emphasis added).

The defendant quotes *Singleton v. Wiley,* 372 So.2d 272 (Miss.1979) wherein the Mississippi Supreme Court held that the trial court properly instructed the jury in that case on assumption of risk and comparative negligence. In regard to the trial court's instructions, the Mississippi Supreme Court stated:

We feel that considering all of the instructions together, both those for the Plaintiff and those for the Defendant, that the jury was properly and fully instructed and furnished sufficient guidelines to properly decide the questions submitted to them.

*Id.* at 275. As this court stated in its memorandum opinion, it appears that this holding in *Singleton* was based on a misquotation of the holding in *Braswell.* The *Singleton* court did not state that it was overruling or modifying *Braswell.* Rather, it clearly appears that the *Singleton* court was trying to follow *Braswell* but based its holding on a misquotation from *Braswell.* Therefore, although *Singleton* was viewed as authority by this court in applying Mississippi law, it was and must be viewed in its proper context with *Braswell.*

█ The defendant also asserts that if the assumption of risk instruction is not allowed under the facts of the instant case it will be denied its right to have its theory of the case presented to the jury. Courts and commentators around the nation have recognized, however, that the assumption of risk defense is subsumed into the doctrine of comparative negligence. A comparative negligence instruction allows the jury to consider any voluntary encounter of a known danger by the plaintiff as well as other relevant conduct by the plaintiff and also allows it to compare this conduct by the plaintiff to the conduct or product of the defendant. Thus, defendant's right to have its theory of the case presented to the jury is preserved under a comparative negligence instruction.

With a comparative negligence instruction the jury is allowed to compare the plaintiff's conduct, whether that conduct is characterized as assumption of risk or negligence, with the conduct of the defendant. An assumption of risk instruction does not allow the jury to make this comparison. When a jury is given *both* an assumption of risk instruction and a comparative negligence instruction, it is faced with a perplexing predicament: On one hand the court tells the jury under the comparative negligence instruction to compare the conduct of the parties. On the other hand with the assumption of risk instruction the court tells the jury that it must find for the defendant without comparing the defendant's conduct to the plaintiff's conduct if it finds that the plaintiff voluntarily encountered a known risk. Thus, the giving of both instructions necessarily results in con-

fusion as to whether the jury is or is not to consider and compare the defendant's conduct to the plaintiff's conduct. The *Braswell* court was endeavoring to "clarify th[is] perplexing problem" when it held that "where assumption of risk overlaps and coincides with contributory negligence the rules of the defense of contributory negligence shall apply." *Braswell*, 281 So.2d at 675, 677.

Courts in other comparative negligence jurisdictions have recognized that assumption of the risk is but a form of contributory negligence and have given the assumption of risk bar to recovery the diminished applicability that this court interprets *Braswell* as giving it. *Compare Duncan v. Cessna Aircraft Col.*, 665 S.W.2d 414 (Tex.1984); *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971). In holding that the assumption of risk doctrine should no longer apply as an absolute bar to the plaintiff's recovery except where the plaintiff expressly assumes the risk, the Idaho Supreme Court stated:

> Legal commentators and courts alike have criticized [the doctrine of assumption of risk] for the unfairness and harshness it causes,[4] and for the duplicity and confusion it engenders.[5] The doctrine's unfairness is rooted in its 'all-or-nothing' approach. That is, a plaintiff can recover only if he or she is found not to have assumed the risk that caused the injury. Once the risk is found to have been assumed, however, the plaintiff is barred from any recovery, even if the risk the plaintiff assumed was reasonable and the defendant was negligent toward the plaintiff.

*Salinas v. Vierstra*, 107 Idaho 984, 695 P.2d 369 (1985) (citing *Tiller v. Atlantic Coastline Railroad Co.*, 318 U.S. 54, 68–69, 63 S.Ct. 444, 451–52, 87 L.Ed. 610 (1943) (J., Frankfurter concurring); *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147, 1149 (1971); Prosser & Keeton on Torts, § 68 at 493, 94 (5th Ed.1984)). Most comparative negligence states have either abolished the assumption of risk defense altogether or have merged the doctrines of assumption of risk and contributory negligence. The equitable result has been the elimination of the assumption of risk doctrine's total bar to recovery by the plaintiff. *See Salinas*, 695 P.2d at 373. (citing various state codes and cases).

In *Salinas* the Idaho Supreme Court stated:

> [T]he 'all-or-nothing' effect of application of the assumption of risk defense is inequitable. It runs counter to all sense of reason and fairness. This is particularly true in today's age of comparative negligence; it would be the ultimate legal inconsistency to reject contributory negligence as an absolute defense yet at the same time allow its effect to continue under the guise of assumption of risk.

*Salinas*, 695 P.2d at 374. This court is of the opinion that the Mississippi Supreme Court in *Braswell* was of the same mind as the Idaho Supreme Court in *Salinas*. Since the Mississippi Comparative Negligence Statute had done away with contributory negligence as a complete bar to recovery, the *Braswell* court appears to have reasoned that an instruction on comparative negligence should be given rather than the complete bar instruction on assumption of risk in all but the "rare" cases.

This court notes that the Mississippi Supreme Court in *Braswell* did not completely abolish the doctrine of assumption of risk. The court recognizes, as have other courts, that the doctrine of assumption of risk does apply in rare cases. Although the Mississippi Supreme Court has not clearly specified which factual situations may qualify as one of these rare cases, one such rare case might exist where a plaintiff, either orally or in writing, has expressly assumed the risk of a known danger. *See, e.g., Salinas*, 695 P.2d at 375. Another such case where assumption of risk may be applicable is where the evidence shows that the plaintiff voluntarily and unreasonably encountered a known risk *and* that the defendant was completely negligence free. In such a case, since there is no evidence of any negligence by the defendant, there is no negligence to be compared between the defendant and the plaintiff. *See, e.g., Jackson v. City of Kansas City*, 235 Kan.

278, 680 P.2d 877 (1984). The Mississippi Supreme Court in *McLeod v. Whitten,* 413 So.2d 1020 (Miss.1982) may have recognized this second type of case as one of the rare cases in Mississippi where the doctrine of assumption of risk may apply. The court in *McLeod* stated that the assumption of risk instruction in that case should have contained a fourth element that the defendant was not negligent. *McLeod,* 413 So.2d at 1023.[1]

In *Yarbrough v. Phipps,* 285 So.2d 788 (Miss.1973), the Mississippi Supreme Court stated that although an assumption of risk instruction should seldom be employed, it could be employed where the plaintiff's conduct is extremely venturous and "much more venturous" than the plaintiff's conduct was in that case. *Id.* at 790. In *Yarbrough* the plaintiff had testified that she knew that the defendant's car by which she was standing when she was injured was in a dangerous position. There was also evidence that the defendant had been negligent in parking his car in that dangerous position. After reviewing *Yarbrough,* it appears that conduct that meets the level of "venturousness" required for an assumption of risk instruction is conduct which amounts to the sole proximate cause of the plaintiff's injuries. This conclusion is in harmony with the Mississippi Supreme Court's statement in *McLeod* that for the assumption of risk instruction given in that case to have been proper, the instruction should have provided in addition to the stated elements that the jury must find that the defendant was not negligent.

The defendant asserts that the Mississippi Supreme Court in *Singleton* equated assumption of risk with conduct by a plaintiff done "in a spirit of fun and venturousness." The *Singleton* court stated:

> We feel that the jury could have concluded from the evidence adduced in the case at bar that this 18 year old high school student did voluntarily and knowingly jump on the back of a moving car in a spirit of fun and venturousness while the driver was looking ahead and concentrating on starting the car, and that *the plaintiff's negligence was thus the sole proximate cause* of his injuries. (emphasis added).

*Singleton,* 372 So.2d at 275. This statement concerning fun and venturousness more accurately appears to be comparing the plaintiff's negligence with the defendant's, as is done under the comparative negligence doctrine.

The reason behind the enactment of comparative negligence statutes, such as Mississippi's comparative negligence statute, is to promote the equitable allocation of loss among all parties that are legally responsible for the loss in proportion to their amount of fault. Allowing the complete bar of the doctrine of assumption of risk to apply in cases where there is evidence of negligence by the plaintiff and evidence of negligence or a defective product attributable to the defendant would defeat the purpose of the comparative negligence statute. Giving the assumption of risk instruction in conjunction with the comparative negligence instruction results in a conflict in the instructions and leaves the jury without a proper guide in its deliberations. This court is of the opinion that the Mississippi Supreme Court in *Braswell* intended to avoid such a result.

The motion to reconsider or in the alternative for certification of an interlocutory appeal is denied. This case shall be set by a separate order for retrial.

---

1. In its brief the defendant states that there was no issue in *McLeod v. Whitten* of a contributory negligence instruction versus an assumption of risk instruction. This court reads *McLeod* to specifically recognize a "conflict in the instructions" of comparative negligence and assumption of risk. The *McLeod* court indicated that under ordinary circumstances it would have followed *Hatcher v. Daniels,* 228 Miss. 196, 87 So.2d 490 (1956) and held that there was a conflict between the contributory negligence and assumption of risk instruction and that the contributory negligence instruction did not cure the error of the assumption of risk instruction. Because the jury specifically stated that the defendant was not negligent, however, the *McLeod* court held that "the jury was not confused by any conflict in the instructions." *McLeod,* 413 So.2d at 1023–24.